**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEITH BOWMAN,

        Plaintiff,      :   Civil Action No. 07-2610 (MLC)

      v.                    **O P I N I O N**

MICHELLE R. RICCI, et al.,

        Defendants.

**APPEARANCES**

Keith Bowman, Pro Se
New Jersey State Prison, #2053/266318B
P.O. Box 861, Trenton, NJ 08625

**COOPER, District Judge**

    Plaintiff, who is incarcerated at the New Jersey State Prison, seeks to bring this action alleging violations of his constitutional rights in forma pauperis, without prepayment of fees pursuant to 28 U.S.C. § 1915. Based on his affidavit of indigence and prison account statement, the Court will grant his application pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

    The Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. Plaintiff's claims will be dismissed.

**BACKGROUND**

Plaintiff is an inmate who serves his term of imprisonment while being housed at a Management Control Unit ("MCU") since August 7, 1992.  He contends that housing at the MCU violates his constitutional rights, and seeks an order directing Defendants to move him out of the MCU into general prison population and awarding damages.  Specifically, Plaintiff asserts that the Management Control Unit Review Committee ("MCURC") violated his Eighth Amendment and due process rights because the MCURC: (1) did not furnish him with "any present disciplinary reports" or investigation reports indicating that he "continues to remain a substantial threat to the security of the institution"; and (2) decided to continue housing him at the MCU "for an indefinite period of time," even though he successfully completed certain MCU programs.  (Dkt. entry no. 1, ¶¶ 15-16, 19-20.)  Plaintiff also contends that the MCURC violated his Sixth Amendment rights when the MCURC "refused to furnish . . . [P]laintiff with a summary of the confidential information" that allegedly affected MCURC's decision to house Plaintiff at the MCU.  Id. ¶¶ 17-18.

**DISCUSSION**

**A.   Standard of Review**

The Prison Litigation Reform Act "curtail[s] claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir.

1996).  Under 28 U.S.C. § 1915A(b), a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. When determining the sufficiency of a complaint, the Court must construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  But the Court need not lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

**B.   42 U.S.C. § 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights.  It states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To establish a violation of 42 U.S.C. § 1983, a plaintiff must show that the challenged conduct (1) was committed by a

person acting under color of state law, and (2) deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pa., 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   Due Process Claim**

Plaintiff challenges his confinement in MCU since 1992.  The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process.  See Fuentes v. Shevin, 407 U.S. 67 (1972).  Only if the answer is yes, is the second step, determining what process is due, necessary.  See Morrissey v. Brewer, 408 U.S. 471 (1972).

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under that clause itself or be created by mandatory language in state statutes or regulations. See Sandin v. Conner, 515 U.S. 472, 483-484 (1995).  But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Id. at 478.  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed

4

upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see Vitek v. Jones, 445 U.S. 480, 493 (1980).  A convicted inmate such as Plaintiff has no liberty interest arising by force of the Due Process Clause itself in remaining in the general population.  See Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242; Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).

The state may create a protected liberty interest through a statute or regulation requiring placement in the general population under certain circumstances.[1]  See Sandin, 515 U.S. at

---

[1] New Jersey regulations do not require placement in general population.  Rather regulations require officials to place an inmate in MCU under certain circumstances:
> (a) An inmate shall be assigned to the M.C.U. when the [committee], after considering the criteria in N.J.A.C. 10A:5-2.4, concludes that the inmate poses a substantial threat:
>     1. To the safety of others;
>     2. Of damage to or destruction of property; or
>     3. Of interrupting the operation of a State correctional facility.
> (b) Procedures for [committee] hearings described in N.J.A.C. 10A:5-2.6 shall be followed and completed prior to placement in M.C.U.
> (c) If there is a need for immediate placement in the M.C.U., such placement shall be made in accordance with N.J.A.C. 10A:5-2.8.

N.J.A.C. § 10A:5-2.5.

Therefore, Plaintiff errs in his assertion that the MCURC was obligated to: (1) furnish Plaintiff with "any present disciplinary reports" or investigation reports indicating that he

483-84. "[M]andatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Torres, 292 F.3d at 151 (quoting Sandin, 515 U.S. at 484). But "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); see Fraise v. Terhune, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoner has no protected liberty interest in being free of indefinite segregated confinement in Security Threat Group Management Unit).[2] Thus, Plaintiff's housing at the MCU does not

---

"continue[d] to remain a substantial threat to the security of the institution," or (2) release him into general population because he successfully completed certain MCU programs. (Dkt. entry no. 1, ¶¶ 15-16, 19-20.) Conversely, the MCURC had discretion to continue housing him at the MCU on the basis of his past infringements. See N.J.A.C. §§ 10A:5-2.4(a)(1), 10A:5-2.5(a). (Dkt. entry no. 1, ¶¶ 7, 9.)

[2] Moreover, even if a lengthy confinement in a restrictive prison environment amounts to an "atypical and significant hardship in relation to the ordinary incidents of prison life," see Shoats v. Horn, 213 F.3d 140, 143-44 (3d Cir. 2000), that finding does not end the inquiry for purposes of procedural due process. The question then becomes what process a prison setting requires. Such process must include the prisoner's opportunity to present his views to the prison official charged with deciding whether to retain him in such restrictive environment. See id. at 145-46 (relying on Hewitt v. Helms, 459 U.S. 460, 476 (1983)). Since a statement from the prisoner challenging the reasons for his placement in a particular setting is sufficient to protect his due process rights, as long as "the decision maker reviews

impose an atypical and significant hardship in relation to the ordinary incidents of prison life in New Jersey, and Plaintiff has no state created liberty interest in avoiding such confinement.

**D.   Eighth Amendment Claim**

The Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  But it does not permit inhumane ones, and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Eighth Amendment imposes a duty on a prison official to provide humane conditions of confinement and take reasonable measures to guarantee the safety of inmates. Hudson v. Palmer, 468 U.S. 517, 526-527 (1984); Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990).

The Eighth Amendment prohibits conditions that unnecessarily and wantonly inflict pain, or are grossly disproportionate to the severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346-47.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346.  To determine whether the conditions of confinement violate the

---

the charges and then-available evidence" against the prisoner, see id., and Plaintiff was able to present his challenges to the MCURC at all his quarterly hearings (see dkt. entry no. 1, ¶¶ 1-9), Plaintiff's housing at the MCU does not violate the Due Process Clause.

7

Eighth Amendment, the courts employ a test that includes objective and subjective elements, both of which must be satisfied by the plaintiff.  See Counterman v. Warren County Corr. Fac., 176 Fed.Appx. 234, 238 (3d Cir. 2006).

A prisoner may satisfy the objective element of a conditions-of-confinement claim, that a deprivation be "sufficiently serious," if he can show that the conditions alleged, either "alone or in combination, . . . deprive him of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347-48.  Such necessities include: "adequate food, clothing, shelter, sanitation, medical care, and personal safety."  Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).

The complaint here does not state that housing at the MCU deprives Plaintiff of adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Therefore, his housing at the MCU does not deprive him of the minimal civilized measure of life's necessities and cannot provide valid grounds for his Eighth Amendment claim.

**E.   Sixth Amendment Claim**

Plaintiff asserts that the MCURC violated his Sixth Amendment rights when the MCURC "refused to furnish . . . [P]laintiff with a summary of the confidential information" that allegedly affected MCURC's decision to house Plaintiff at the MCU.  (Dkt. entry no. 1, ¶¶ 17-18.)  But the Confrontation Clause of the Sixth Amendment

8

does not apply to administrative hearings challenged under 42 U.S.C. § 1983.  See Thomas v. Ill. Dep't of Ins., 1993 U.S. Dist. LEXIS 17890, at *4-5 (N.D. Ill. Dec. 13, 1993) (examining language of Confrontation Clause and collecting cases).

Even if the Confrontation Clause applied to administrative hearings, Plaintiff's allegations that MCURC erred by failing to provide him with a confidential report would not state a claim, since: (1) New Jersey regulations prevent the MCURC from disclosing confidential information to inmates during MCU hearings, see N.J.A.C. § 10A:5-2.6(h)-(j) ("At the hearing, the inmate shall be informed of all adverse information bearing on the case, with the exception of information designated confidential by the M.C.U.R.C.," and a summary of confidential information should be provided to the inmate only if the MCURC relied on such information); and (2) "[o]n October 11, 2006, [the MCURC notified Plaintiff that] 'there [did] not appear to be any confidential information relative to [Plaintiff's] continued placement at the [MCU.  The MCURC, however, relied on other factors in reaching its decision.  Specifically, the MCURC] noted [his] violent history[,] including an attack on staff member in 1990 and an assault on another inmate in 1996.  The MCURC consider[ed] these acts to be a threat to the safety and security of any correctional facility.'"  (Dkt. entry no. 1, ¶¶ 7, 9.) Accord N.J.A.C. §§ 10A:5-2.4(a)(1).  Therefore, the MCURC's

9

refusal to disclose confidential information to Plaintiff did not violate his Sixth Amendment rights.[3]

**CONCLUSION**

The Court grants Plaintiff's application to proceed in forma pauperis and dismisses the complaint for failure to state a claim upon which relief may be granted. The Court will issue an appropriate order and judgment.

                                              s/ Mary L. Cooper
                                              **MARY L. COOPER**
                                              United States District Judge

---

[3] Plaintiff also complains about not being "notified [of] or able to appear at [his annual] hearing." (Dkt. entry no. 1, ¶ 14.) His complaint, however, indicates that (unlike Plaintiff's formal quarterly hearings which had calendar dates, produced certified administrative record, and which Plaintiff was duly notified of and attended) there was no calendar date for or even any form of record of an annual review hearing. (See id., ¶¶ 1-14.) Accord N.J.A.C. § 10A:5-2.6 ("formal review of each inmate in the M.C.U. shall be made a minimum of every three months"). Thus, Plaintiff could not have been wronged by not being notified about or able to attend the hearing that was not conducted.